UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                             Case No. 15-cr-108-pp

RODNEY ROWSEY,

    Defendant.

---

**ORDER DENYING DEFENDANT'S LETTER MOTION FOR COMPASSIONATE RELEASE (584)**

---

On December 12, 2016, the defendant pled guilty to an information charging him with conspiring to possess with intent to distribute and distributing cocaine and crack. Dkt. No. 344. The government asked the court to sentence the defendant to seven years in prison, while the defendant's lawyer recommended the mandatory minimum sentence of five years. Dkt. No. 411 at 4. The court imposed a sentence of seventy months. <u>Id.</u>; Dkt. No. 412.

On June 23, 2020, the court received a letter from the defendant. Dkt. No. 584. The defendant says that he's finishing out the last few months of his sentence—he anticipates being released on February 9, 2021 to a halfway house. <u>Id.</u> He says that his grandmother has been in and out of the hospital due to illness, and that he has been involved with doctors who say that she needs a caretaker who can be with her. <u>Id.</u> He reminds the court that his father died in December 2017, and says that his grandmother has no one she can rely on. <u>Id.</u> As for the defendant, he indicates that he is in custody at USP

Leavenworth in Kansas, where he is on lockdown with only an hour for a shower and phone calls. Id. He say that there is a horrible outbreak of COVID-19 at Leavenworth, and that he is scared that if he is infected, he won't make it out alive. Id. The defendant says he's gone through "every chain of command" and that he was told to contact his sentencing judge. Id. He asks the court to place itself in his shoes for two minutes, indicating that he doesn't have a violent background and that he already has lost both parents. Id. The defendant says that all he is requesting is twenty-four-hour electronic monitoring at home so he can save his life and his grandmother's, because he has no support system other than his grandmother. Id.

The court asked Federal Defender Services to review the motion to determine whether it might file something on the defendant's behalf. Dkt. No. 585. Federal Defender Services responded that due to the demands on its time, it could not file anything for the defendant, but emphasized that it was not taking a position on whether the court should grant the defendant's motion. Dkt. No. 586.

The court also asked probation and the government to weigh in on the defendant's motion. Dkt. No. 587. Probation reports that as of July 17, 2020, USP Leavenworth has had *no* inmates test positive for COVID-19. Dkt. No. 590 at 1. See also BOP COVID-19 map, available at https://www.bop.gov/coronavirus (last checked July 17, 2020), showing no cases in any BOP facility anywhere in Kansas. The BOP medical records show that other than being treated for minor injuries to his shoulder and ankle during his incarceration,

the defendant has had no ongoing medical problems. Id. at 2. BOP records also show that between 2018 and 2020, the defendant has had two disciplinary violations for possessing a hazardous tool, a violation for interfering with secrecy devices and one for possessing a dangerous weapon. Id. He will be eligible for home detention on February 4, 2021 and is scheduled for release on August 4, 2021. Id. See also Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (showing a release date of August 4, 2021).

Although the defendant indicated in his letter that he had gone through every chain of command, the government reports that on June 24, 2020, it contacted the case management coordinator at Leavenworth, who indicated that the defendant has not asked the warden there for compassionate release, as required by 18 U.S.C. §3582(c)(1)(A). Dkt. No. 589 at 10. The government argues that even if the defendant had first asked the warden at Leavenworth, the court should not grant his motion because he has not demonstrated how the COVID-19 pandemic, as applied to *him*, constitutes an extraordinary and compelling reason for his release. Id. at 13. The government points out that the defendant has not argued that *he* has any medical problems that make it more likely he will be infected, or more likely that he will become severely ill if infected. Id. The government points out that the defendant is only twenty-nine years old and that at the time of the presentence report, he reported no health issues except occasional chest pain. Id. at 15. Regarding the defendant's argument that his grandmother is ill and needs his care, the government argues that this is not a basis for release under the statute. Id. The government

also asserts that the defendant has provided no proof that his grandmother is ill, nor explained what is wrong with her nor demonstrated that he is the only person who could care for her. Id. at 16.

Finally, the government argues that the defendant was convicted of a serious drug offense, and that his BOP disciplinary records show that on three times he has been found in possession of a dangerous tool or weapon, that once he was disciplined for interfering with security devices and that the BOP has determined that he is not eligible for home confinement due to his high risk to reoffend. Id. at 17. The government recounts that the defendant was convicted of being a member of a group of individuals who obtained large quantities of cocaine for distribution, that the defendant often had a gun while dealing and that he was responsible for at least five kilograms of cocaine or 280 grams of crack. Id. at 18. The government reminds the court that while on bond prior to his sentencing, the defendant violated his bond several times, including selling heroin, cocaine and pills. Id. The government asserts that, contrary to the defendant's statements, he has over a year left to serve on his sentence. Id. at 19.

To the extent that the defendant is asking the court to order the Bureau of Prisons to place him on home confinement, the court does not have the authority grant that request. Section 12003 of the CARES Act is the section that applies to the Bureau of Prisons. Section 12003(b)(1)(2) reads:

> HOME CONFINEMENT AUTHORITY.—During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the *Director of the Bureau* may lengthen the maximum

amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the *Director* deems appropriate.

CARES Act, Pub. L. 116-136, §12003(b)(1)(2) (emphasis added). "The BOP has the authority to place someone on home confinement, and to decide when to do so." United States v. Menzie, No. 11-cr-63-pp, 2020 WL 1991577, at *3 (E.D. Wis. Apr. 27, 2020) (citing 18 U.S.C. §3624(c)). The court does not have the authority to grant the defendant's request for home confinement.

To the extent that the defendant is asking the court to reduce his sentence under the compassionate release provision of the First Step Act, he has not demonstrated that he is entitled to that relief. Generally, a court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. §3582(c). The compassionate release provision of the First Step Act makes an exception to that rule in certain narrow circumstances. It says:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the

> Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(b);
>
> And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

The first part of the statute—section (c)(1)(A)—says that the Director of the Bureau of Prisons may make a motion to the court, asking for a compassionate release sentence reduction. The BOP has not done that here.

In the alternative, the statute says that the *defendant* may make a motion to the court after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." According to the government, the defendant has not asked the warden to reduce his sentence under §3582(c)(1). He has not, therefore, exhausted his remedies as the statute requires.

Even if the defendant had asked the warden of Leavenworth for compassionate release before filing this motion, the court would not grant him a compassionate release sentence reduction. Section 3852(c)(1)(A)(ii) doesn't apply to the defendant; he is not at least seventy years old (he is twenty-nine), has not served at least ten years of his sentence and the BOP has not determined that he is not a danger to the community. So the only basis for the court to grant his motion would be §3582(c)(1)(A)(i)—if there were "extraordinary and compelling reasons" that warranted a sentence reduction. The application note to U.S.S.G. §1B1.13 defines "extraordinary and compelling" reasons:

(A) **Medical Condition of the Defendant.**—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples included metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

That substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The defendant does not fall into category (A). His motion does not allege that he suffers from any medical condition. In the July 2015 bond study

prepared in relation to his arrest, the defendant told the pretrial services officer that his health was "good" and that he didn't suffer from any chronic illnesses; he also denied that he was under the care of a doctor or taking any prescription medications. Dkt. No. 104 at 2. In the May 2017 presentence report, the defendant again denied being on any prescribed medication and described his health as good "with the exception of having occasional pain in his chest." Dkt. No. 404 at ¶99.

The defendant doesn't fall into category (B)—as noted, he is twenty-nine years old with no serious health issues. He does not fall into category (C)—he has not alleged that his son's mother (or anyone else who helps care for his son) has passed away or is incapacitated, nor has he alleged that his spouse (the court is not aware of the defendant being married) or registered partner is incapacitated and he is the only person available to care for that spouse or partner. So the court must analyze whether there are some other extraordinary or compelling circumstances in this defendant's particular case that warrant the compassionate release reduction. There are not.

The defendant is young and healthy. He is in a facility that has been lucky enough to have no confirmed cases of COVID-19[1] (in contrast to facilities

---

[1] The court is confused by the defendant's statement that there is a "horrible outbreak" of the virus where he is. Perhaps he is referring to the community where the penitentiary is located. But the County of Leavenworth, Kansas reports only 336 confirmed cases in the community, plus 916 cases among inmates in two *local* detention facilities/jails. https://www.leavenworthcounty.gov/covid/ (last visited July 17, 2020). The entire state of Kansas reports 21,965 confirmed cases and 299 deaths, https://www.coronavirus.kdheks.gov/160/COVID-19-in-Kansas, last visited July 17, 2020), compared to 40,507 cases in Wisconsin with 15,363 of those

like FCI Elkton, Ohio, which has had hundreds). He is worried about his grandmother. The court can understand that—his grandparents raised him, for the most part, and he is very close with his grandmother. But that is not an "extraordinary or compelling" circumstance. Many inmates are worried about their loved ones even when there isn't a worldwide pandemic. Many are even more worried now, given the vulnerability of older people and people with underlying health conditions. If being worried about loved ones because of the virus were enough to justify compassionate release, most of the jails and prisons in the country would be empty.

Since the beginning of the COVID-19 crisis in mid-March, this court has received many compassionate release motions. Some have been from inmates who are in facilities with hundreds of confirmed cases of COVID-19. Some are from inmates who have seen fellow inmates die of the virus. Some are from inmates with high blood pressure, high blood pressure, mental health issues. At least one was from an inmate who had been infected with the virus. The court denied many of those motions, because the defendants did not demonstrate "extraordinary and compelling" circumstances. The defendant in this case is better off than many of those defendants.

The government also is correct that the defendant was convicted of a serious offense and wasn't deterred by being on bond for that offense. He

---

cases in Milwaukee County and 833 deaths state-wide, https://www.dhs.wisconsin.gov/covid-19/index.htm (last visited July 17, 2020).

apparently has had violations while in custody. Under these circumstances, the court cannot find that the defendant is not a danger to the community.

The court does not mean to trivialize the defendant's concerns about COVID-19. The court knows that many incarcerated persons cannot practice social distancing, do not have masks, cannot wash their hands frequently, have no access to hand sanitizer. It is much harder for inmates to take the precautions that public health experts advise all of us to take to avoid the spread of this dangerous virus. The court understands why the defendant is afraid, and why he is worried about his grandmother.

If, however, fear of the virus was a basis for granting a sentence reduction for compassionate release, there would no longer be inmates in any jails or prisons. The defendant has not demonstrated the extraordinary and compelling circumstances that would justify the sentence reduction he requests.

The court **DENIES** the defendant's letter motion for compassionate release. Dkt. No. 584.

Dated in Milwaukee, Wisconsin this 20th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**